UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Jeffrey Twite on behalf of himself
and all others similarly situated,

Civil No. 05-2210 (PAM/RLE)

Plaintiff,

v.

**MEMORANDUM AND ORDER**

Ameriquest Mortgage Company and
O'Neil Closing Services, LLC,

Defendants.

---

This matter is before the Court on Defendant Ameriquest Mortgage Company's Motion to Dismiss and on Defendant O'Neil Closing Services, LLC's Motion for Summary Judgment and Motion for Sanctions. For the reasons that follow, the Court grants the Motion to Dismiss and Motion for Summary Judgment, but denies the Motion for Sanctions.

**BACKGROUND**

In November 2003, Plaintiff Jeffrey Twite obtained a mortgage from Defendant Ameriquest Mortgage Company ("Ameriquest"). An employee of Defendant O'Neil Closing Services ("O'Neil") presided over the closing.

Twite incurred a number of fees for services necessary to originate and close the loan. An HUD-1A form, which Ameriquest prepared, itemized the fees and listed the recipients of the distributions. Line 1106 of the HUD-1A form states that Twite paid O'Neil $200.00 for

"notary fees."[1]

In August 2005, Twite commenced this putative class action. He asserts to represent "a class of Minnesota consumers who . . . were charged an excessive notary fee in violation of Minn. Stat. § 357.17 and were presented with a written statement by Defendant Ameriquest under the false pretense that such a notary fee was legal." (Am. Compl. ¶ 5.) Twite alleges that he was charged $200.00 for notary fees, that Ameriquest represented to him that he was obligated to pay the $200.00 notary fee, and that O'Neil received the $200.00 notary fee. (Id. ¶¶ 12-16.)

**DISCUSSION**

**A.    Motion to Dismiss**

Twite alleges that Ameriquest violated Minn. Stat. § 325F.69 by misrepresenting that it was lawful to charge $200.00 for notary services. For the purposes of the Motion to Dismiss, the Court takes all facts alleged in the Amended Class Action Complaint as true. Westcott v. Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). The Court must construe the allegations in the Amended Class Action Complaint and reasonable inferences arising from those allegations favorably to Twite. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). The Court will grant the Motion to Dismiss only if it appears beyond doubt that Twite cannot establish facts that would entitle him to relief. Id.

---

[1] Line 1106 identifies Northwest Title & Escrow Corporation as another potential recipient of the $200.00. However, Twite recently stipulated to the dismissal of all claims against Northwest Title & Escrow Corporation. (Docket No. 50.)

>The Minnesota Prevention of Consumer Fraud Act prohibits:
>
>The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby.

Minn. Stat. § 325F.69. However, a misrepresentation of law generally is not actionable. Spitzmueller v. Burlington N. R.R. Co., 740 F. Supp. 671, 677 n.6 (D. Minn. 1990) (Rosenbaum, J.) (citations omitted); Stark v. Equitable Life Assurance Soc'y of the United States, 285 N.W. 466, 468 (Minn. 1939) (citations omitted).

Although Twite alleges that Ameriquest misrepresented Minnesota law, he submits that his claim falls within an exception to the general rule. Specifically, he relies on the exception that applies when "the person misrepresenting the law is learned in the field and has taken advantage of the solicited confidence of the party defrauded." Stark, 285 N.W. at 469.

In Stark, an agent of the defendant insurance company misrepresented to the plaintiff, who had become disabled, that he was not legally entitled to benefits under the insurance contract. In reliance on such misrepresentation, the plaintiff, who could no longer afford the premiums, allowed the insurance to lapse. The Minnesota Supreme Court created the exception because of the disparity in knowledge and how the plaintiff had "implicit trust and confidence" in the insurance agent based on a friendship. Id. at 467.

Clearly, Stark is factually distinguishable. In this case, Twite obtained his loan in an arm's length business transaction. There are no allegations that Ameriquest preyed on Twite

as an unwitting consumer. Thus, the exception enunciated in <u>Stark</u> does not apply in this case, and the fraud claim based on a misrepresentation of the law is unviable. The Court therefore grants the Motion to Dismiss.

**B.     Motion for Summary Judgment**

Twite alleges that the notary fee O'Neil charged violated Minnesota law. According to O'Neil, the undisputed record shows that O'Neil provided closing services — and not just notary services.

The Court will grant the Motion for Summary Judgment only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering the Motion for Summary Judgment, the Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to Twite, the non-moving party. <u>Enter. Bank v. Magna Bank</u>, 92 F.3d 740, 747 (8th Cir. 1996). The burden of demonstrating that there are no genuine issues of material fact rests on O'Neil, the moving party. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). If O'Neil carries its burden, Twite must demonstrate the existence of specific facts in the record that create a genuine issue for trial. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986).

Minnesota law defines a "notarial act" as "any act that a notary public of this state is authorized to perform, and including taking an acknowledgment, administering an oath or affirmation, taking a verification upon oath or affirmation, witnessing or attesting a signature, certifying or attesting a copy, and noting a protest of a negotiable instrument." Minn. Stat. §

358.41(1). A notary public cannot charge more than a $1.00 for a notarial act. Minn. Stat. § 357.17.

However, a closing agent may charge a fee for residential real estate closing services. See Minn. Stat. § 507.45. A "closing agent" is an individual who "directly or indirectly provides closing services incident to the sale, trade, lease, or loan of residential real estate, including drawing or assisting in drawing papers incident to the sale, trade, lease, or loan." Minn. Stat. § 82.17.

The record shows that the notarial act O'Neil performed was only part of the overall closing services it provided to Twite. For example, the O'Neil employee traveled to Twite's residence, presided over the closing of his real estate transaction, ensured that all closing documents were completed properly, and transmitted all documents back to the title company for finalization and recording once the closing was completed. Indeed, the invoice O'Neil submitted to Ameriquest reflects that it charged $200.00 for "closing" the Twite transaction.[2]

Although Twite does not dispute these facts, he attempts to survive summary judgment by advancing four arguments. First, he argues that the HUD-1A form does not state that O'Neil provided closing services. Rather, the $200.00 fee is identified on Line 1106, which is expressly reserved for notary fees, and the form states that O'Neil received $200.00 only for notary fees. Although these facts may be material to Twite's fraud claim, they are not material to the Minn. Stat. § 317.57 claim. The only facts that are material are those that resolve the

---

[2] The Court notes that Ameriquest — and not O'Neil — completed the HUD-1A form.

issue of whether the services O'Neil provided were notarial acts or closing services. The parties agree to the substance of the actual services O'Neil performed for Twite. Thus, Twite's first argument fails.

Second, Twite argues that he was not given the option of using anyone other than O'Neil for the closing of his loan. He submits that he did not affirmatively select to use O'Neil, did not choose the location of the closing, did not ask for the closing to be conducted at his home, was not presented with the option of having the closing conducted anywhere but at his home, and was neither unwilling nor unable to travel elsewhere for the closing. In addition, he did not agree to any closing convenience fee. Although unfortunate, these facts are immaterial to the claim at issue because they do not dispute that O'Neil provided more than notarial acts. Thus, Twite's second argument fails.

Third, Twite relies heavily on deposition testimony given in <u>Leehy v. Ameriquest et al.</u>, File No. CX-04-217 (Chisago Co. Minn. Oct. 18, 2004), where an O'Neil representative stated that O'Neil typically charged $200.00 for "its notary fees." Twite's reliance on the parsed-out testimony is unavailing, as he ignores other testimony that O'Neil provides mobile closing services and that the fee was not a standard notary fee. Viewed as a whole, the deposition testimony fails to create a genuine issue of material fact. Thus, the third argument fails.

Finally, Twite argues that summary judgment is premature since no discovery has occurred. Although Twite identifies information that is purportedly relevant, none of the information he details will dispute the fact that O'Neil provided services over and beyond what can be characterized as notarial acts. Thus, his final argument fails as well.

issue of whether the services O'Neil provided were notarial acts or closing services. The parties agree to the substance of the actual services O'Neil performed for Twite. Thus, Twite's first argument fails.

Second, Twite argues that he was not given the option of using anyone other than O'Neil for the closing of his loan. He submits that he did not affirmatively select to use O'Neil, did not choose the location of the closing, did not ask for the closing to be conducted at his home, was not presented with the option of having the closing conducted anywhere but at his home, and was neither unwilling nor unable to travel elsewhere for the closing. In addition, he did not agree to any closing convenience fee. Although unfortunate, these facts are immaterial to the claim at issue because they do not dispute that O'Neil provided more than notarial acts. Thus, Twite's second argument fails.

Third, Twite relies heavily on deposition testimony given in <u>Leehy v. Ameriquest et al.</u>, File No. CX-04-217 (Chisago Co. Minn. Oct. 18, 2004), where an O'Neil representative stated that O'Neil typically charged $200.00 for "its notary fees." Twite's reliance on the parsed-out testimony is unavailing, as he ignores other testimony that O'Neil provides mobile closing services and that the fee was not a standard notary fee. Viewed as a whole, the deposition testimony fails to create a genuine issue of material fact. Thus, the third argument fails.

Finally, Twite argues that summary judgment is premature since no discovery has occurred. Although Twite identifies information that is purportedly relevant, none of the information he details will dispute the fact that O'Neil provided services over and beyond what can be characterized as notarial acts. Thus, his final argument fails as well.

The Court will not allow Twite to exploit a clerical error. See Cardinal v. Merrill Lynch Realty/Burnet, Inc., 433 N.W.2d 864, 869 (Minn. 1988) (what a fee is called on a HUD-1 form cannot be dispositive in nature of the services actually performed as that would "exalt form over substance"). Because it is undisputed that O'Neil provided more than a mere notarial act, the Court grants the Motion for Summary Judgment.

**D.     Motion for Sanctions**

O'Neil asks that the Court to sanction Twite and his counsel for failing to withdraw the allegations and claim against O'Neil. Federal Rule of Civil Procedure 11 requires that an attorney conduct a reasonable inquiry of the factual and legal basis for a claim before filing a complaint. Fed. R. Civ. P. 11(b). To constitute a reasonable inquiry, the pre-filing investigation must uncover a factual and legal basis for the allegations in the Complaint. Coonts v. Potts, 316 F.3d 745, 753 (8th Cir. 2003) (citation omitted). A court may impose sanctions under Rule 11 if the advancement of a claim is unsupported by the facts and law. Fed. R. Civ. P. 11(c). The Court has broad discretion in determining whether sanctions are appropriate. Id.

The Court is not convinced that sanctions are appropriate in this case. Although Twite failed to establish a genuine issue of material fact to survive summary judgment, his arguments were not entirely frivolous. Accordingly, the Court denies the Motion for Sanctions.

**CONCLUSION**

Based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Ameriquest Mortgage Company's Motion to Dismiss (Docket No. 15) is **GRANTED**;

2. Defendant O'Neil Closing Services's Motion for Summary Judgment (Docket No. 22) is **GRANTED**; and

3. Defendant's Motion for Sanctions (Docket No. 51) is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: March 28, 2006

s/ Paul A. Magnuson
Paul A. Magnuson
United States District Court Judge